**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
*Baltimore Division*

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CURTIS D. FLOOD | ) | Case No. 10-37227-RAG |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| CURTIS D. FLOOD, | ) | |
| | ) | |
| Plaintiff, | ) | AP. No. 16-00142-RAG |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC; | ) | |
| U.S. BANK TRUST, N.A., as Trustee for | ) | |
| LSF9 Master Participation Trust; and | ) | |
| CALIBER HOME LOANS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING, LLC'S**
**MOTION TO DISMISS COUNTS III, V, VI AND PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT ON COUNT IV: BREACH OF CONTRACT**

Curtis Flood, plaintiff ("Plaintiff" or "Mr. Flood") in the above-captioned the adversary

proceeding, through his undersigned counsel, submits this Opposition to Defendant Ocwen's

motion to dismiss (the "**Motion**") Counts III, V and VI of the Adversary Proceeding (the

"**Adversary Proceeding**")

## BACKGROUND

Straddled with heavy debt and a delinquent mortgage, Mr. Flood filed for chapter 13 in

December of 2010. Mr. Flood's bankruptcy case was simple. He agreed to pay all of his unsecured

debt in full and catch up on his mortgage over five years. During the pendency of his chapter 13

case, Ocwen approved Mr. Flood for a trial loan modification, which he successfully completed

and was approved for the final loan modification. Mr. Flood signed the final loan modification agreement and returned it to Ocwen in February 2015. As with all loan modifications in chapter 13, Mr. Flood sought and obtained approval of the modification from the bankruptcy court. Sometime thereafter, Ocwen transferred the servicing rights to Caliber Home Loans, Inc. ("Caliber"). Currently, Caliber does not know the terms of the loan that it is servicing. Conversely, Ocwen maintains that Mr. Flood's loan was not modified because Ocwen sent Mr. Flood a better modification offer three months later in April, 2015. Nonetheless, the only record of the April loan modification came from Caliber *after* Plaintiff filed his original Complaint. The April modification is fabricated; Ocwen simply stuck the signature pages from Mr. Flood's first modification onto the second modification. Against this backdrop, Ocwen now moves the Court to dismiss on the grounds that Plaintiff has failed to state a claim for his fraud and Truth in Lending Act ("TILA") claims.

## STATEMENT OF THE FACTS[1]

1.     Mr. Flood owns property at 5229 Trumps Mill Road, Baltimore, Maryland 21206 (the "Real Property"). (Amended Cpt. ¶ 15).

2.     On March 14, 2006, Mr. Flood executed an "InterestOnly" adjustable rate mortgage loan in the amount of $400,800.00 (the "subject loan") in favor of Countrywide Home Loans, and encumbered by a first deed of trust in favor of Countrywide Home Loans. The terms of the InterestOnly Adjustable Rate Note were:

  a.    Interest rate of 5.50% fixed until April 1, 2013 ("Change Date"), then to an adjustable interest rate;
  b.    Payments beginning May 1, 2006;
  c.    Maturity date of April 1, 2036;
  d.    Monthly payment of interest-only in the amount of $1,837.00 "before the First Principal and Interest Payment Due Date" (defined as "the first monthly payment date after the first Change Date").

---

[1]     Plaintiff refers to the Facts as set out in Plaintiff's Amended Complaint, paragraphs 15-97, for more details.

(Amended Cpt. ¶¶ 16-17).

3.      On December 1, 2010, Mr. Flood filed for Chapter 13 bankruptcy relief naming BAC Homes Loans Servicing, LP, fka Countrywide Home Loans Servicing ("BAC Home Loans"), as a secured creditor. Mr. Flood's Chapter 13 Plan proposed to pay BAC Home Loans directly for post-petition payments. (Amended Cpt. ¶¶ 18-19).

4.      On March 11, 2011, BAC Home Loans filed its Proof of Claim (POC 7-1) in the secured claim amount of $427,176.97, including $33,321.81 in prepetition arrearages. The Proof of Claim included an escrow analysis. (Amended Cpt. ¶ 20).

5.      On March 1, 2012, BAC Home Loans filed its Notice of Mortgage Payment Change effective 04/01/2012, stating the principal balance as $400,737.00. (Amended Cpt. ¶ 21).

6.      On June 26, 2012, Ocwen acquired the servicing rights of the loan from Bank of America. (Amended Cpt. ¶ 22).

7.      On December 10, 2012, Ocwen filed an assignment of claims transfer agreement 3001(e) from BAC Home Loans, transferor, to Ocwen. (Amended Cpt. ¶ 23).

8.      On March 19, 2013, Ocwen filed its Notice of Payment Change, increasing the monthly payment to $2,845.36 ($2,010.85 principal and interest, plus $834.51 escrow) effective May 1, 2013, increasing the "P&I payment" from $1,835.88 per month to $2,010.85. (Amended Cpt., ¶¶ 24-25).

9.      In support of its March 19, 2013 Notice of Payment Change, Ocwen filed a February 19, 2013 letter to Mr. Flood advising that he "ignore the previous notices that [you] have received for the said payment change date." The letter further stated that the principal balance on

the loan as of 5/1/2013 (effective date of the new payment) "will be $400,554.88," a decrease of $182.12 since March 1, 2012.[2] (Amended Cpt. ¶ 26).

10.    On July 24, 2013, Ocwen filed its Amended Proof of Claim (POC 7-2). The Claim stated the annual interest rate of 5.50% *fixed* and the amount of secured claim at $427,176.97. (Amended Cpt., ¶ 27).

11.    The Ocwen Amended Claim stated that 11 monthly payments (02/01/10 – 12/01/10) @ $2,459.13/month were included in the $33,321.81 prepetition arrearages. The monthly payment of $2,459.13 *included the monthly escrow payment.* Also included in the Ocwen Amended Claim prepetition arrearages was the *escrow shortage* in the amount of $6,014.54 (Part 2: Statement of Prepetition Fees, Expenses, and Charges).[3] (Amended Cpt. ¶ 28).

12.    The $33,321.81 prepetition arrearages were paid in full to BAC Home Loans and Ocwen by the Chapter 13 Trustee through Mr. Flood's Chapter 13 plan, with the final payment being made to Ocwen on December 31, 2013. (Amended Cpt., ¶¶ 29-31).

13.    The Trustee disbursed $20,295.64 to Ocwen from 7/31/2012 to 12/31/2013. Ocwen posted the "pre-petition payments" as follows:

    a.    $5,144.29 to "Escrow Application";
    b.    $91.84 to Late Charges;
    c.    $14,112.33 directly to "Suspense Application."

    The remaining $947.18 was receipted and incorrectly posted as a "Payment" (i.e., this payment was not posted as a "pre-petition payment") to Escrow Application. A total of

---

[2]    Mr. Flood's loan was "interest only" until May 1, 2013; however, the principal balance was decreased by $245.12 from the origination of the loan to the "First Change Date."

[3]    The monthly payments were $1,837.00 pursuant to the InterestOnly Adjustable Rate Note dated March 14, 2006 until the "First Change Date" of May 1, 2013. The "monthly payment" arrearage included monthly escrow amounts of $622.13 per month, or $6,843.43. The $33,321.81 "total amount necessary to cure default as of the petition date" claimed by Ocwen and its predecessor included escrow shortage of $6,014.54 in total prepetition fees, expenses and charges.

$6,091.47 from Mr. Flood's Chapter 13 plan disbursements was applied by Ocwen to Escrow Application;[4] however, an escrow shortage of $6,014.54 was claimed on the proof of claim. (Amended Cpt. ¶ 31).

14.     On or about August 27, 2014, Ocwen approved Mr. Flood for a trial plan under its proprietary loan modification program.[5] Pursuant to the terms of the trial plan, Mr. Flood was required to make monthly payments (PITI) of $2,352.21 on 10/01/2014, 11/01/2014 and 12/01/2014. Mr. Flood timely made the three trial period payments and the trial period payments were received timely by Ocwen. (Amended Cpt. ¶¶ 32-33).

15.     On September 10, 2014, an Assignment of Deed of Trust from MERS, as nominee for Countrywide, to Ocwen, dated July 21, 2014, was recorded in the Land Records of the Baltimore County Circuit Court. (Amended Cpt. ¶ 34).[6]

16.     Having timely received the three trial plan payments, Ocwen approved Mr. Flood's loan for a final proprietary modification on January 29, 2015 and sent the final Non-Hamp loan modification agreement ("Agreement") to Mr. Flood on that date. (Amended Cpt. ¶ 35).

17.     The Agreement provided for:

---

[4]     Mr. Flood was unaware of Ocwen's application of the Trustee's payments until Ocwen responded to Mr. Flood's Qualified Written Request on December 23, 2015.

[5]     The August 28, 2014 loan modification letter from Ocwen stated that Ocwen was "unable to offer [Mr. Flood] an affordable loan modification within the guidelines of the investor or program rules which extends the terms of your loan by less than 15 years from the current maturity date pursuant to **Massachusetts House Bill 4323 (MGL c. 244, § 35B(b)(2)**." (Letter included in *Exhibit H*, attached to Amended Complaint.)

[6]     The Assignment of Deed of Trust, recorded on September 10, 2014 in the Baltimore County Circuit Court Land Records at JLE 35351, p. 0269, states: "This ASSIGNMENT OF DEED(S) OF TRUST from MORTGAGE ELECTRONIC SYSTEMS, INC. (MERS), solely as nominee for COUNTRYWIDE HOME LOANS, INC., its successors and/or assigns, whose address is 1901 E. Voorhees Street, Ste C, Danville, IL 61834, PO Box 2026 Flint, MI 48501-2026 ("Assignor") **to OCWEN LOAN SERVICING, LLC**, whose address is 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409, (Assignee) **all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County recorder of BALTIMORE, State of MARYLAND, as follows: That certain promissory note or obligation dated MARCH 14, 2006 in the principal amount of $400,800.00 executed by CURTIS D. FLOOD and more fully described or referred to in a deed of trust of even date therewith**...." (Emphasis supplied.) See *Exhibit A*, attached hereto and incorporated herein by reference.

    a.      New Principal Balance of $399,288.86;
    b.      New Maturity Date of 12/1/2054;
    c.      Fixed Interest Rate of 4.625%;
    d.      New Monthly Principal and Interest Payment of $1,827.26;
    e.      Initial Monthly Escrow Payment of $541.59;
    f.      Total Monthly Payment of $2,368.85 beginning on January 1, 2015.

(Amended Cpt. ¶ 36).

18.    Mr. Flood signed and returned the fully executed Agreement to Ocwen. Ocwen received Mr. Flood's fully executed Agreement on February 24, 2015. The loan modification reduced Mr. Flood's monthly mortgage payment from $2,813.90 to $2,368.85. (Amended Cpt. ¶¶ 37-38).

19.    On April 16, 2015, Mr. Flood filed his Motion to Modify Secured Debt in his Chapter 13 case, which Motion was amended on June 4, 2015 and served on Ocwen. In support of his Motion, Mr. Flood attached a copy of his executed Non-HAMP Loan Modification Agreement with Ocwen, dated 1/29/2015, as Exhibit A. (Amended Cpt., ¶¶ 39-40).

20.    Neither Ocwen nor anyone on its behalf, responded or objected to Mr. Flood's Motion to modify the secured debt, and on June 19, 2015, the Court entered its Order Authorizing Loan Modification. (Amended Cpt. ¶¶ 41-42).

21.    After the Court authorized the loan modification, Mr. Flood contacted Ocwen several times regarding the status of his mortgage loan account. Ocwen representatives told Mr. Flood there was a balance of approximately $8,000.00 in "suspense balance" and advised him that no payment was due. (Amended Cpt. ¶ 43).

22.    Ocwen further advised Mr. Flood that there was no loan modification. (Amended Cpt. ¶ 44).

23.    On or about August 14, 2015, Mr. Flood submitted his loan modification appeal to Ocwen. (Amended Cpt. ¶ 45).

24.     In response to Mr. Flood's appeal, Ocwen provided him with a letter dated August 24, 2015 acknowledging Mr. Flood's approval for the August 27, 2014 trial plan under Ocwen's proprietary modification program, the timely receipt of Mr. Flood's three TPP payments, Mr. Flood's approval for a final proprietary modification on January 29, 2015, and the receipt of Mr. Flood's fully executed loan modification Agreement on February 24, 2015. (Amended Cpt. ¶ 46).

25.     Ocwen alleged that on April 27, 2015, a reduction to the interest rate of Mr. Flood's "approved modification" was made and that an updated final modification agreement reflecting the updated interest rate of 4.50% was mailed to Mr. Flood on that date for his review and execution. (Amended Cpt. ¶ 47).

26.     Mr. Flood requested a copy of the April 27, 2015 "amended" loan modification, but Ocwen advised Mr. Flood that they had no copy of the modification because the modification agreement was not signed and returned. (Amended Cpt. ¶ 48).

27.     Ocwen states that it "received the required consent from the bankruptcy court *on 05/26/2015*," which is three weeks prior to the Court's Order entered on June 19, 2015. (Amended Cpt. ¶ 49).

28.     Ocwen claims that upon receipt of the court's consent, Ocwen was "unable to finalize [Mr. Flood's] approved modification because [Mr. Flood] did not return the amended fully-executed agreement requested from [Mr. Flood] on 04/27/2015." (Amended Cpt. ¶ 50).

29.     Mr. Flood had no prior knowledge of and did not receive an "amended" loan modification agreement from Ocwen. (Amended Cpt. ¶ 51).

30.     Upon receipt of the August 24, 2015 letter from Owen, Mr. Flood contacted Ocwen and requested a copy of the "amended loan modification agreement," but Ocwen told Mr. Flood

they did not have a copy of that amended agreement and could not provide him with a copy. (Amended Cpt. ¶ 52).

31.    On September 28, 2015, the Chapter 13 Trustee served the Notice of Final Cure Payment on Ocwen. (Amended Cpt. ¶ 53).

32.    On October 12, 2015, Ocwen filed its Response to the Notice of Final Cure Payment, stating that Mr. Flood paid the amount required to cure the pre-petition default on the claim, but that Mr. Flood is post-petition due for post-petition payments from the August 1, 2014 monthly payment onward. (Amended Cpt., ¶ 54).

33.    Ocwen has never notified Mr. Flood of such delinquency and has not notified the Bankruptcy Court of such delinquency. (Amended Cpt. ¶ 55).

34.    In support of its Response, Ocwen attached a payment history, appearing to be created by Ocwen or its attorneys for the purpose of filing the Response. The payment history begins with a due date of 1/1/2011 (received date of 1/31/2011); however, Mr. Flood's loan was not transferred to Ocwen until June 26, 2012 and the transfer of the claim to Ocwen was not filed until December 10, 2012. (Amended Cpt. ¶ 56).

35.    Furthermore, according to the attachment to Ocwen's Response to the Notice of Final Cure Payment, Ocwen ignored Mr. Flood's loan modification, as approved by this Court. (Amended Cpt. ¶ 57).

36.    Mr. Flood called Ocwen and requested an accounting ("first accounting") which Ocwen produced on October 26, 2015. (Amended Cpt., ¶ 58).

37.    The "first accounting" indicates large amounts held in suspense balance, including the suspense balances of $6,436.58 on May 6, 2012; $8,131.76 on June 1, 2015; and an ending suspense balance of $1,679.68 as of October 12, 2015. (Amended Cpt. ¶ 59).

38.     The "first accounting" itemizes forbearance payments received on September 3, 2014, September 5, 2014, October 29, 2014, December 2, 2014, January 5, 2015, and February 3, 2015. (Amended Cpt. ¶ 60).

39.     The "first accounting" shows that April 21, 2015, Ocwen made 21 entries adjusting balances, including escrow and suspense balances, and reversing payments, and reversing the forbearance payments. (Amended Cpt. ¶ 61).

40.     The "first accounting" itemized two payments receipted by Ocwen on September 18, 2015 and one payment on October 12, 2015 that are not itemized on Ocwen's Response to the Notice of Final Cure Payment. (Amended Cpt. ¶ 62).

41.     On November 24, 2015, Mr. Flood, by and through his attorney, mailed a Qualified Written Request ("QWR") to Ocwen specifically questioning the loan modification approved by Ocwen on or about August 27, 2014 and Ocwen's handling of that loan modification and the proper application of payments made by Mr. Flood or by the Chapter 13 Trustee to Mr. Flood's mortgage loan account. (Amended Cpt. ¶ 63).

42.     On December 7, 2015, Ocwen transferred the servicing of Mr. Flood's loan to Caliber. (Amended Cpt. ¶ 64).

43.     On December 23, 2015, Ocwen partially responded to Mr. Flood's QWR. (Amended Cpt. ¶ 65).

44.     Mr. Flood's QWR specifically requested "[C]opies of all documentation pertaining to the loan modification for which [Mr. Flood] was approved for the trial plan on or about 08/27/2014 including, but not limited to, all correspondence to and from [Mr. Flood]; all worksheets pertaining to the loan modification; [Mr. Flood's] application and supporting documentation; copies of all trial period payments made to Ocwen; and a copy of the final

proprietary modification." Ocwen failed to produce any documentation pertaining to this approved

loan modification. (Amended Cpt. ¶ 66).

45.     Ocwen had previously advised Mr. Flood that it did <u>not</u> have a copy of the

"amended" loan modification; however, in response to the QWR, Ocwen produced a purported

copy of the April 27, 2015 "amended" loan modification. Remarkably, Ocwen failed to produce a

copy of the final proprietary loan modification approved on January 29, 2015, executed by Mr.

Flood, and received by Ocwen on February 24, 2015.  (Amended Cpt. ¶¶ 67, 92).

46.     The April 27, 2015 "amended" loan modification stated a "New Principal Balance"

of $398,501.44, a reduction of $787.42 from the new principal balance stated in the approved and

executed loan modification.[7] (Amended Cpt. ¶ 68).

47.     Ocwen also produced a second accounting ("second accounting") of Mr. Flood's

mortgage loan account from 05/06/2012 to December 9, 2015, differing greatly from the first

accounting. Notably, the only postings to the second accounting between the dates of 08/01/2014

and 04/21/2015 are:

      a.    08/01/2014 - Payment of $2,700.00 (due date 11/01/2013);
      b.    09/09/2014 - Insurance Disbursement of $2,300.00 payable to Homesite Insurance Company;
      c.    09/22/2014 - Insurance Disbursement of $1,894.34 payable to USAA Casualty Insurance; and
      d.    12/17/2014 - Tax Disbursement of $2,475.14 to Baltimore County (Semiannual).

(Amended Cpt. ¶ 69-70).

48.     More notably, the second accounting does not include the forbearance payments or

the 21 account adjustments made to the account on April 21, 2015. Only four entries are posted

---

[7]     The interest rate reduction of 0.125% and the $787.42 reduction in "New Principal Balance" would have reduced the monthly principal and interest payment by $35.75, from $1,827.26 to $1,791.51.  The total PITI payment would have been reduced from $2,368.85 to $2,333.10.  The principal balance reported on Ocwen's accounting at January 1, 2015 was $390,236.76 but was increased to $392,299.54 on April 21, 2015.

for 04/21/2015: three payments and an "Investor Suspense" amount applied/assessed in the amount of $6,436.58 which was reversed on 09/18/2015. (Amended Cpt. ¶ 71).

49.    Most notably, the second accounting itemizes three payments not included in Ocwen's October 12, 2015 Response to Notice of Final Cure Payment, and another payment dated after the Response:

| | |
|---|---|
| 09/18/2015 | $3,646.03 |
| 09/18/2015 | $2,790.55 |
| 10/12/2015 | $2,790.55 |
| 10/29/2015 | $2,790.55 |
| Total Additional Payments | $12,017.68 |

(Amended Cpt. ¶ 72).

50.    Ocwen issued an IRS Form 1098 to Mr. Flood for calendar year 2015, stating the following:

a.    Interest paid during 2015:  $8,417.77
**b.    *Principal paid during 2015:  $9,460.64***
c.    Late Charges paid during 2015:  $0.00
d.    Total Escrow Deposits:  $7,465.80
e.    Total Escrow Disbursements:  $4,161.68

51.    The 1098 Statement of Account *through 12-31-2015* states:

| | |
|---|---|
| Beginning principal balance at 01/05/2015 | $390,236.76 |
| Ending principal balance at 10/29/2015 | 384,131.55 |
| Principal Reduction from 01/05/2015-10/29/2015 | $6,105.21 |

However, Ocwen reported the principal paid by Mr. Flood during 2015 totaled $9,460.64, an additional $3,355.43 principal paid. ***Exhibit I***, attached hereto, and incorporated herein by reference. (Amended Cpt. ¶¶ 73-74).

52.    Through the series of April 21, 2015 payment reversals and adjustments itemized in Ocwen's October 26, 2015 first accounting, Ocwen increased the principal balance from $387,123.21 to $392,299.54. An additional unexplained "Principal Balance Adjustment" posted

to the account on October 12, 2015 increased the principal balance by $1,292.65. The $9,460.64

principal paid in 2015 by Mr. Flood is calculated, as follows:

| | |
|---|---|
| Highest reported principal balance at 04/21/2015 | $392,299.54 |
| Ending Principal balance at 10/29/2015 | -384,131.55 |
| Principal Paid to 03/30/2015 | $8,167.99 |
| Added to principal at 10/12/2015 | 1,292.65 |
| Amount principal paid during 2015 | $9,460.64 |

(Amended Cpt. ¶ 75).

53.     As evidenced by the accountings produced by Ocwen, Mr. Flood's mortgage loan

was an "escrowed" loan. Taxes and insurance were paid by the mortgagee. The Baltimore County

State and County Real Property Tax Bill dated July 1, 2015 was sent to Ocwen for payment of Mr.

Flood's total annual real property taxes in the amount of $4,581.66, payable in semiannual

payments. Ocwen received the July 1, 2015 tax bill. On July 14, 2015, Ocwen made the first

semiannual Tax Disbursement of $2,268.97 to Baltimore County for payment of Mr. Flood's real

property taxes. Ocwen failed to make the second semiannual payment for Mr. Flood's real property

taxes due in December 2015. (Amended Cpt. ¶¶ 76-79).

54.     On January 20, 2016, the Court granted Mr. Flood a discharge under 11 U.S.C. §

1328(a).  Mr. Flood successfully completed this Chapter 13 plan and was entitled to a "fresh start."

Defendants' actions have deprived Mr. Flood from the enjoying of a "fresh start." (Amended Cpt.

¶¶ 80, 95).

55.     On January 22, 2016, U.S. Bank Trust, N.A., as trustee for LSF9 Master

Participation Trust (by Caliber Home Loans, Inc., as its attorney in fact), by and through its agent,

Scott E. Nadel, Esq., filed a Transfer of Claim Other than for Security *from Ocwen* to U.S. Bank

Trust, N.A.[8] (Amended Cpt. ¶ 81).

---

[8]     A search of the Baltimore County Circuit Court Land Records did not find an Assignment to U.S. Bank Trust,
N.A., or to the LSF9 Master, or to Caliber. The last Assignment was recorded on 09/10/2014 to Ocwen.

56.     The Transfer of Claim directed payments be sent to Caliber Home Loans. (Amended Cpt. ¶ 82).

57.     After his mortgage loan was transferred to Caliber, Mr. Flood contacted Caliber and requested an accounting. Caliber produced a Payoff Quote, good through January 29, 2016, stating the following:

| | |
|---|---|
| Principal | $384,131.55 |
| Interest Due | 16,172.47 |
| Escrow/Impound Required | 902.39 |
| Fees Required with Payoff | 30.00 |
| Unapplied Funds (DIS BAL) | -2,500.00 |
| TOTAL AMOUNT DUE | $398,736.41 |

(Amended Cpt. ¶ 83).

58.     On March 1, 2016, the Baltimore County Office of Budget & Finance issued a Final Notice Before Tax Sale for failure to pay County real property taxes for the year 2016. The real property taxes for the levy period of July 1, 2015 to June 30, 2016 were due and payable in December 2015 in the amount of $2,287.69. Interest and penalties have now been added to the amount due, and as of March 31, 2016, the amount of property taxes due is $2,381.32. The Final Notice stated that "***unless all taxes in arrears are paid within thirty days from the notice date, the Collector will proceed to sell the property to satisfy [Mr. Flood's] entire indebtedness***." (Amended Cpt. ¶¶ 84-86).

59.     On April 19, 2016 at 8:14 AM, counsel for Caliber produced by email "a copy of the OCWEN loan modification for Curtis Flood," as requested by Mr. Flood's counsel. (Amended Cpt. ¶ 87).

60.     The "OCWEN loan modification" produced by Caliber on April 19, 2016 is the Non-HAMP Loan Modification Agreement that Ocwen purportedly amended and mailed to Mr.

Flood on April 27, 2015. Mr. Flood never received this "amended" Agreement. (Amended Cpt. ¶ 88).

61.     Comparing the April 27, 2015 "amended" loan modification agreement previously produced by Ocwen in response to the Plaintiff's QWR with the "OCWEN loan modification" produced by Caliber, it is clear that the OCWEN loan modification produced by Caliber has been altered, as follows:

| Page | OCWEN LOAN MODIFICATION PRODUCED BY OCWEN IN RESPONSE TO QWR *EXHIBIT H* | OCWEN LOAN MODIFICATION PRODUCED BY CALIBER ON APRIL 19, 2016 *EXHIBIT L* |
|---|---|---|
| 4 | | (Stamped) **Rejected** |
| 7 | **Dated 4/27/2015 Unsigned** | Staple imprints (upper left corner); Loan Number handwritten at top; "*mod.*" handwritten; **Dated 1/29/2015 Signed by Curtis D. Flood** Loan number circled (bottom left corner) |
| 8 | Incomplete (undated, unsigned) | Staple imprints (upper left corner); Loan Number handwritten at top; **Fully Completed Signed by Curtis D. Flood Dated 2/12/15 Notarized** |
| 9 | Incomplete (undated, unsigned) | Staple imprints (upper left corner); Loan Number handwritten at top; Fully Completed Signed by Curtis D. Flood Dated 2/12/15 Notarized |
| 10-12 | Additional blank acknowledgments | (Not included) |

(Amended Cpt. ¶ 89).

62.     Pages 7, 8 and 9 of the "OCWEN loan modification" produced by Caliber are pages 7, 8 and 9 from the January 29, 2015 loan modification agreement signed by Mr. Flood on February 12, 2015 and returned to Ocwen. (Amended Cpt. ¶ 90).

63.     Defendants intentionally and fraudulently substituted Mr. Flood's February 12, 2015 signature pages for the unsigned pages in the April 27, 2015 loan modification agreement. (Amended Cpt. ¶ 91).

64.     In response to Mr. Flood's Motion for Determination of Final Cure and Payment of all Post-Petition Payments filed in Mr. Flood's Chapter 13, Ocwen stated that "[O]n or about April 27, 2015, Respondent [Ocwen] reduced the Debtor's interest rate to 4.500% and sent to the Debtor for execution an updated loan modification agreement reflecting the more favorable interest rate. ***It appears that the Debtor did not execute and return to Respondent the Updated Agreement***." (Emphasis added.) (Amended Cpt. ¶ 93).

65.     As evidenced by Ocwen's and Caliber's documents:

> a.     Ocwen failed to honor Mr. Flood's approved loan modification;
>
> b.     Ocwen failed to comply with the terms of Mr. Flood's approved loan modification;
>
> c.     Ocwen has produced conflicting payment histories for Mr. Flood's mortgage loan account;
>
> d.     Ocwen has produced accountings for Mr. Flood's mortgage loan account stating "due dates" that differ from the "due dates" stated on Ocwen's Response to the Notice of Final Cure Payment;
>
> e.     Ocwen has misapplied Mr. Flood's payments and the Chapter 13 Trustee's payments;

    f.      Ocwen failed to properly credit payments to Mr. Flood's account pursuant to the terms of the Note and Mortgage and approved loan modification agreement;

    g.      Ocwen improperly held payments in a suspense account;

    h.      Caliber continues to improperly hold payments in a suspense account;

    i.      Defendants failed to pay Mr. Flood's escrowed real property taxes; and

    j.      Defendants intentionally and fraudulently substituted Mr. Flood's signature pages from the original loan modification for the unsigned "amended" loan modification signature pages.

66.     Mr. Flood has experienced emotional distress, stress, and anxiety as a result of Defendants' actions. (Amended Cpt. ¶ 97).

## STANDARD OF REVIEW

67.     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff need not prove her case in the complaint: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," a level higher than possibility but lower than probability. *Id.* The Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).

### 1. **Plaintiff has stated a claim against Ocwen for TILA Violation in Count III**

68.     Ocwen's main argument in support of its Motion to Dismiss Plaintiff's TILA claim is that although it is a "servicer" for purposes of 15 U.S.C.A. § 1639f, they escape liability because they are not a "creditor" for purposes of 15 U.S.C.A. § 1640.   At first blush, intentionally or otherwise, Congress limited claims under 1639f to lenders that both service and own consumer mortgages (e.g. small local banks that hold and service their own paper).   Typically, "only creditors and their assignees—and not mere servicers lacking ownership interest in the loan—may be held liable under the TILA. *Ward v. Branch Banking & Tr. Co.*, Civil Action No. ELH-13-01968, 2014 U.S. Dist. LEXIS 80701, at *28 (D. Md. June 13, 2014).   Parsing through the case-law the key question is whether Ocwen was a "mere servicer" and not the creditor as defined by TILA. "The only parties who can be liable for [TILA] violations are the original creditor, 15 U.S.C. § 1640, and assignees of that creditor, 15 U.S.C. § 1641. *Id. quoting, Chow v. Aegis Mortgage Corp.*, 286 F. Supp. 2d 956, 959 (N.D. Ill. 2003).   Nonetheless, the bankruptcy record, Ocwen's judicial admissions and land records all suggest that Ocwen is the holder and the creditor and therefore liable.

| DATE | DOCUMENT | ADMISSION |
|---|---|---|
| 12/10/2012 | Transfer of Claim (filed in Flood Chapter 13 Bankruptcy) | BAC Home Loans Servicing, LP (Transferor) to **Ocwen Loan Servicing, LLC (Transferee)** |
| 03/19/2013 | Notice of Payment Change (filed in Flood Chapter 13 Bankruptcy | **Creditor: Ocwen Loan Servicing, LLC** |
| 07/24/2013 | Proof of Claim 7-2 (filed in Flood Chapter 13 Bankruptcy) | "**Name of Creditor** (the Person or other entity to whom the debtor owes money or property): **Ocwen Loan Servicing, LLC**" |

| | | |
|---|---|---|
| 07/21/2014 | Assignment of Deed of Trust[9] | "This ASSIGNMENT OF DEEDS OF TRUST from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS)…to **OCWEN LOAN SERVICING, LLC**...*all its rights, title and interest in and to a certain mortgage duly recorded...,* as follows: *That certain promissory note or obligation dated March 14, 2006, in the principal amount of $400,800.00, executed by CURTIS D. FLOOD and more fully described or referred to in a deed of trust of even date....*" |
| 10/12/2015 | Response to Chapter 13 Trustee's Notice of Final Cure Payment and Opportunity for Hearing (filed in Flood Chapter 13 Bankruptcy) | "Respondent [Ocwen] is the **holder of a secured claim** related to the property located at 5229 Trumps Mill Road, Baltimore, MD 21206." (Emphasis supplied.) |

69.    Ocwen finds itself in the unusual position of wearing two hats: creditor and servicer.  As cited in Ocwen's Motion, most servicers can duck TILA liability because they are not the creditor as defined by the statute.  Here, Ocwen meets the definition of "assignee" under 15 U.S.C. § 1641(f) because it is both the servicer and owner of the debt.  TILA is not limited to transactions that happen at origination but "imposes obligations on creditors throughout the life of the loan." *Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013).  15 U.S.C. § 1639(f) requires Ocwen as the servicer to properly credit Mr. Flood's payments and face statutory penalties as a creditor pursuant to 15 U.S.C. § 1640(a)(2) if it does not.  TILA is a remedial statute that is liberally construed in the favor of consumers. *White v. Arlen Realty & Development Corp.*, 540 F.2d 645, 649 (4th Cir. 1975).  There is simply nothing in the record or otherwise to suggest that

---

[9]    An assignment of a deed of trust alone may not be enough.  *See e.g. Barr v. Flagstar Bank, F.S.B.*, Civil Action No. RDB-13-2654, 2014 U.S. Dist. LEXIS 129878 (D. Md. Sep. 17, 2014).  Ocwen cannot avail itself of this defense here because unlike the Defendant in Barr, Ocwen has stated that it is the entity owed money and not just the holder of a security instrument.

Ocwen is anything or anyone other than the creditor and Ocwen's motion to dismiss Plaintiff's TILA claim fails.

## 2. **Plaintiff has stated a claim for fraud in Count V of the Amended Complaint**

70.    Plaintiff's fraud claims (under common law and the MMFPA) are based on fifteen months of deceptive conduct on the part of Ocwen which have been carefully pled in detail in the amended complaint. To be sure, Mr. Flood did not rely on a manufactured loan document created *after* litigation commenced.   He also cannot remember the names of the countless Ocwen representatives that told him one lie after another.   And unquestionably, Caliber paid Mr. Flood's escrow money with Mr. Flood's own money after he filed a 116 paragraph complaint against them. Mr. Flood is in a position where his current lender, Caliber, cannot tell him what his monthly mortgage payment is or how much the principal balance of his mortgage.   Conversely, Ocwen maintains that he is well over forty thousand dollars behind on his mortgage because:

> "On or about April 27, 2015, Respondent reduced the Debtor's interest rate to 4.500% and sent to the Debtor for execution an updated loan modification agreement (hereinafter "Updated Agreement") reflecting the more favorable interest rate. It appears that the Debtor did not execute and return to Respondent the Updated Agreement. As a consequence of Debtor's failure to return the Updated Agreement, the agreement expired and was deemed invalid, thereby returning the Debtor's payment obligation to pre-Agreement terms."   [Ocwen's Response to Notice of Final Cure Payment/Claims Registry #7.]

71.    The Court need only to look at Exhibit L of Plaintiff's Amended Complaint and compare it to the foregoing statement made by Ocwen to the bankruptcy court prior to the filing of this adversary proceeding. Yes, Mr. Flood did not rely upon this exact document turned over by Caliber's counsel.   Instead, he relied on the numerous statements made by Ocwen that he had a modification, he made payments based on those statements, he paid his escrow payments based on Ocwen's statements and he now faces foreclosure because of Ocwen's representations.   The fact

that Ocwen scheme has been uncovered in preliminary discovery only reinforces the merit of this lawsuit.

72.     "To survive a motion to dismiss on a fraud claim under Maryland law, Plaintiff must allege the following elements: 1) that a representation made by a party was false; 2) that the defendant knew the representation was false  or made the misrepresentation with such reckless indifference to truth as to impute knowledge and an intent to defraud; 3) that the misrepresentation was made for the purpose of deceiving the plaintiff; 4) that the plaintiff reasonably relied upon the misrepresentation;  and 5) that the plaintiff suffered damage directly resulting from the misrepresentation." *Rush v. Am. Home Mortg., Inc.*, No. WMN-07-CV-0854, 2009 U.S. Dist. LEXIS 112530, at *48-49 (D. Md. Dec. 3, 2009) *citing Suburban Properties Mgt., Inc. v. Johnson,* 236 Md. 455, 204 A.2d 326, 329 (Md. 1964). "The MMFPA does not define the terms "misrepresentation" or "omission," as used in the statute."  *Galante v. Ocwen Loan Servicing LLC*, Civil Action No. ELH-13-1939, 2014 U.S. Dist. LEXIS 98049, at *80 (D. Md. July 18, 2014). Plaintiffs must plead the elements of a common law fraud claim to state a MMFPA claim. *Id*.

73.     Mr. Flood and Ocwen entered into a binding, permanent modification in February, 2015.  Mr. Flood justifiably relied on it and made payments on it (which Ocwen accepted). The Bankruptcy Court approved the loan modification. Ocwen's successor in interest, Caliber, acknowledges it but cannot compute it.  And yet, Ocwen denies it under the ludicrous premise that it offered better terms a few months later which Mr. Flood had to accept.  Mr. Flood now faces foreclosure. Ocwen concealed its denial of the February binding, permanent loan modification from Mr. Flood for six months. There was never a written denial mailed to Mr. Flood - just as there was never an April amended loan modification agreement mailed to Mr. Flood. As a result of Ocwen's deceptive conduct, Mr. Flood suffered payment of increased interest, additional accrued

interest, service fees, longer loan payoff time, a higher principal balance, deterrence from seeking other remedies, costs and expenses incurred to prevent or fight foreclosure. Ocwen's argument that the doctrine of economic loss controls is premature because according to Ocwen, there is no loan modification/contract.   Certainly, it has no place in Plaintiff's MMFPA claim which permits treble damages and attorney's fees.

74.     Pursuant to Rule 9013-2 of the Local Rules, the Plaintiff states that, in lieu of submitting a memorandum in support of this Motion, he will rely solely upon the grounds and authorities set forth herein.

WHEREFORE, the Plaintiff, Curtis Flood, respectfully requests that the Court deny Ocwen's Motion in its entirety and for such other and further relief as to the Court may seem just and proper.

Respectfully submitted,

Dated:  June 2, 2016                              /s/*Morgan W. Fisher*
Annapolis, Maryland                         Morgan W. Fisher #28711

Law Offices of Morgan Fisher, LLC
172 West Street
Annapolis, MD 21401
410-626-6111
mwf@MorganFisherLaw.com
*Attorney  to the Debtor/Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this 2nd day of June, 2016  I served a copy of the foregoing

Opposition via the Court's CM/ECF system or via first class mail to all parties on the mailing

matrix.

*/s/ Morgan W. Fisher*
Morgan W. Fisher

<u>Service List</u>

Thomas D. Kohn, Esq. on behalf of Defendants Caliber Home Loans, Inc., U.S. Bank Trust, N.A
tkohn@pklaw.com

James Billings-Kang, Esq. on behalf of Defendant Ocwen Loan Servicing, LLC
jbillings-kang@blankrome.com

Gerard Vetter, Esq.
Interim Chapter 13 Trustee & Assistant United States Trustee
Office of The United States Trustee
101 West Lombard Street
Suite 2625
Baltimore, MD 21201
(First Class Mail)

Dated: June 2, 2016                          /s/ Morgan W. Fisher
                                             Morgan W. Fisher #28711